UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

RACHEL PERKINS HOFFPAUIR AND
BRANDON HOFFPAUIR                                    CIVIL ACTION

VERSUS

                                                     NO. 12-403-JJB-SCR

COLUMBIA CASUALTY COMPANY,
ET AL.

## RULING ON DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT

This matter is before the court on [1] Defendant Deputy Joel Arnold's Motion (doc. 21) for Partial Summary Judgment, [2] Defendants former Sheriff of Livingston Parish Willie Graves and Sheriff of Livingston Parish Jason Ard's Motion (doc. 22) for Partial Summary Judgment, and [3] Defendant Columbia Casualty Company's Motion (doc. 24) for Partial Summary Judgment. Plaintiffs Rachel Perkins Hoffpauir and Brandon Hoffpauir filed a Memorandum (doc. 28) in Opposition, to which the defendants filed a Reply Memorandum (doc. 31). Jurisdiction is based on 28 U.S.C. § 1331. Oral argument is not necessary. For the reasons provided herein, the court [1] **GRANTS** the Defendant Deputy Joel Arnold's Motion (doc. 21) for Partial Summary Judgment; [2] **GRANTS IN PART AND DENIES IN PART** the Defendants Willie Graves and Jason Ard's Motion (doc. 22) for Partial Summary Judgment; and [3] **GRANTS IN PART AND DENIES IN PART** Defendant Columbia Casualty Company's Motion (doc. 24) for Partial Summary Judgment.

### Background

On the evening of August 6, 2011, Livingston Parish Sheriff's Deputy Joel Arnold ("Arnold") responded to a 911 call reporting two male individuals armed with firearms who were pointing them at residents of an apartment complex located at 31050 Hwy 16, in Denham Springs. (Doc. 21, Ex. A, p. 27, lines 8−21; p. 33, lines 9−20). Upon arriving at the apartment

complex, Defendant Arnold made contact with the 911 complainant, who told Defendant Arnold that she had been in an altercation with two males and a female who then brandished two firearms. (Doc. 21, Ex. A, p. 33, lines 8–12; p. 36, lines 13–17). While speaking with Defendant Arnold, the 911 complainant spotted two of the suspects—one of the male individuals and the female—and pointed them out to Defendant Arnold. (Doc 21, Ex. A, p. 33, lines 13−20). The male individual identified was Plaintiff Brandon Hoffpauir ("Brandon"). (*See* doc. 21, Ex. A, p. 38, lines 1−5, 19−24).

Upon making contact with Plaintiff Brandon Hoffpauir, Defendant Arnold conducted a preliminary pat-down for weapons by securing him against a wall. (Doc. 21, Ex. A, p. 50, lines 9−24). Then, with the help of another officer, Defendant Arnold handcuffed Brandon. (Doc. 21, Ex. A, p. 50, lines 9−14). Nonetheless, Plaintiff Brandon Hoffpauir resisted, and refused to identify himself or otherwise cooperate with officers. (Doc. 21, Ex. A, p. 51, line 2 through p. 52, line 8). At that point, in an attempt to calm the situation, Defendant Arnold moved Plaintiff Brandon Hoffpauir to the police vehicle. (Doc. 21, Ex. A, lines 10–12). Defendant Arnold moved Brandon in order to separate him from Plaintiff Rachel Perkins Hoffpauir ("Rachel"), who was walking with Brandon at the time of the officer's contact. (*See* doc. 21, Ex. A, p. 52, lines 10−12). Defendant Arnold admits to using "pressure points" to regain control of the situation and escort Brandon to the police vehicle. (Doc. 21, Ex. A, p. 52, lines 13−16). Upon reaching the vehicle, Defendant Arnold placed Brandon on the hood of the car. (Doc. 21, Ex. A, p. 52, lines 13−16). Nevertheless, Brandon continued to resist, "pushed up off," and proceeded to yell. (Doc. 21, Ex. A, p. 52, lines 17−19). At this point, Defendant Arnold forced Brandon back onto the vehicle and conducted a thorough pat down for any weapons. (Doc. 21, Ex. A, p. 52, lines 19−24).

While this was occurring, a "Deputy Rigdell" arrested Plaintiff Rachel Perkins Hoffpauir for disturbing the peace. (Doc. 21, Ex. B, p. 97 line 20 through p. 98 line 12). It is important to note that "Deputy Rigdell" handcuffed Rachel, not Defendant Arnold. (Doc. 21, Ex. B, p. 97, lines 4−5, 17−24). After handcuffing Rachel, "Deputy Rigdell" asked her if she owned any guns, and she responded affirmatively. (Doc. 21, Ex. B, p. 98, lines 4−10). Rachel proceeded to show "Deputy Rigdell" the two guns in her apartment. (Doc. 21, Ex. B, p. 98, lines 4−10).

Upon being transported to the Livingston Parish Detention Center, Brandon Hoffpauir was booked with aggravated assault, resisting an officer, and distributing the peace. Rachel Perkins Hoffpauir was charged with disturbing the peace. Subsequently, the plaintiffs filed the present suit against Defendant Arnold, former Sheriff of Livingston Parish Willie Graves ("Graves"), Sheriff of Livingston Parish Jason Ard ("Ard"), and Columbia Casualty Company ("Columbia"). Columbia Casualty Company is alleged to be the liability insurance provider for the defendants. The plaintiffs have sued Columbia pursuant to the Louisiana Direct Action Statute (La. R.S. § 22:1269). The plaintiffs make a plethora of claims against all defendants, including claims pursuant to 42 U.S.C. § 1983 and Louisiana state tort law claims.

Defendant Arnold filed the present Motion (doc. 21) for Partial Summary Judgment, in which he asserts qualified immunity and that the plaintiffs are unable to present sufficient evidence. Subsequently, Defendants Jason Ard and Willie Graves filed their Motion (doc 22) for Partial Summary Judgment, and Defendant Columbia Casualty Company adopted by reference the entirety of their motion in its Motion (doc 24) for Partial Summary Judgment.

**Analysis**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. P.

56(a). When the non-moving party has the burden of proof at trial, the movant need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party can do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. Rule Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not . . . competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991).

1.  Defendant Joel Arnold's Motion (Doc. 21) for Partial Summary Judgment

    a.  **Claims by Brandon Hoffpauir**

Brandon Hoffpauir asserts the following claims against Defendant Arnold: "(a) battery, (b) assault, (c) intentional infliction of emotional distress, (d) excessive and unreasonable use of force, (e) cruel treatment, (f) failing to offer or provide medical attention, (g) violation of the Constitution and other laws of the United States and of the State of Louisiana." (Doc. 1, p. 6, ¶ 27). In his memorandum in opposition, Plaintiff Brandon Hoffpauir also asserts that there is a pending malicious prosecution claim. (Doc. 28, p. 1). However, this Court has reviewed the complaint in its entirety and finds neither an explicit mention nor an implication of a malicious prosecution claim. This is significant because Plaintiff Brandon Hoffpauir took the time to

specifically enumerate his seven claims against Defendant Arnold in the complaint, none of which were a malicious prosecution claim. (Doc. 1, p. 6, ¶ 27). Plaintiff has not previously sought leave to amend his complaint to add this claim, and the court refuses to allow its addition in the present manner (i.e., mentioning it for the first time in a memorandum in opposition). Accordingly, the court finds there is no pending malicious prosecution claim by Plaintiff Brandon Hoffpauir against Defendant Arnold.

### i. *42 U.S.C. § 1983 and Qualified Immunity*

In his motion, Defendant Arnold asserts that he is entitled to qualified immunity as to the 42 U.S.C. § 1983 claims for excessive force and failure to offer or provide medical care. "The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir. 2001) (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "In the summary judgment context, a government official need only plead qualified immunity, which then shifts the burden to the plaintiff." *Gates v. Texas Dept. of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)). "The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Id.*

Courts must apply "a two-step analysis to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity." *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007). First, the court must "determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights." *Id.* If so, the Court next considers "whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id.* at 411. "To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions." *Id.* "Because qualified immunity protects officers who 'reasonably but mistakenly' violate a plaintiff's constitutional rights, the deputies are entitled to qualified immunity if a reasonable person in their position 'would have believed that [their] conduct conformed to the constitutional standard in light of the information available to [them] and the clearly established law.'" *Id.* at 415 (quoting *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000)). The court "must evaluate an officer's use of force 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Poole v. City of Shreveport*, 691 F.3d 624, 627−28 (5th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). With regards to qualified immunity, the Fifth Circuit previously provided:

> We are careful not to engage in second-guessing officers in situations in which they have to make split-second, on-the-scene decisions while confronted with a violent individual. But our qualified-immunity inquiry requires us to determine whether the officers' actions were objectively unreasonable, in light of clearly-established law at the time, and in light of the information the officers possessed. Qualified immunity thus protects an official whose conduct was objectively reasonable, even if the conduct infringed upon a constitutional right of the plaintiff. Consequently, even law enforcement officials who reasonably but mistakenly use excessive force are entitled to immunity.

*Wagner v. Bay City*, 227 F.3d 316, 321 (5th Cir. 2000) (internal citations omitted).

Even looking at the evidence in the light most favorable to Plaintiff Brandon Hoffpauir, the court finds that Defendant Arnold is entitled to summary judgment on the issue of qualified immunity. Plaintiff Brandon Hoffpauir has presented no evidence to counter the testimony that he continuously and vigorously resisted arrest. Defendant Arnold testified that the Plaintiff refused to cooperate to such an extent that it took two individuals to handcuff him. (Doc. 21, Ex. A, p. 51, lines 2−9). Furthermore, it is uncontradicted that upon being placed on the hood of the police car for a pat down, the Plaintiff Brandon Hoffpauir "resisted," "pushed up off" the hood of the car, and began to yell about something. (Doc. 21, Ex. A, p. 52, lines 17−24).

Plaintiff Rachel Perkins Hoffpauir did testify in her deposition that Brandon's face was swelling after the encounter as a result of having his head pushed up against the wall at the apartment complex. (*See* doc. 21, Ex. B, p. 105, lines 3−11). Nevertheless, there is no medical evidence to support this claim or any of the other injuries claimed by Plaintiff Brandon Hoffpauir. In fact, Brandon actually denied needing medical attention and refused to be examined by the intake nurse at the Livingston Parish Detention Center. (Doc. 21, Ex. D). Furthermore, Defendant Arnold readily admits to securing Plaintiff Brandon Hoffpauir against a wall in order to handcuff him, which may have resulted in his head pushing against the wall. (Doc. 21, Ex. A, p. 53, lines 20−24).

As Plaintiff has failed to present a modicum of evidence to the contrary, this Court finds there is no genuine issue as to the fact that Plaintiff Brandon Hoffpauir was actively and vigorously resisting arrest, and Defendant Arnold utilized force to help secure the Plaintiff and complete the arrest. As Defendant Arnold has raised qualified immunity on summary judgment, it is the burden of the Plaintiff to establish that Defendant Arnold's "allegedly wrongful conduct

violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates*, 537 F.3d at 419 (citing *Michalik*, 422 F.3d at 262). Based on the uncontroverted evidence, this Court refuses to second-guess Defendant Arnold's conduct in the present matter. It must be remembered that at the outset of this entire encounter, Defendant Arnold was responding to a call that two individuals were armed and pointing guns at apartment complex residents. The 911 caller even pointed out Brandon as one of the two individuals brandishing the guns. Furthermore, it is undisputed that the Plaintiff was actively resisting the arrest throughout the encounter. Defendant Arnold's actions must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Poole*, 691 F.3d at 627−28 (quoting *Graham*, 490 U.S. at 396) (internal quotation marks omitted). Accordingly, the court finds there is no genuine issue of material fact that Plaintiff Brandon Hoffpauir was resisting arrest and Defendant Arnold utilized force in response, his use of force was reasonable in light of the circumstances presented before him, and thus, Defendant Arnold is entitled to qualified immunity for his actions.[1]

Furthermore, the court grants summary judgment as to the Section 1983 claim against Defendant Arnold for failure to offer or provide medical attention. In his motion for summary judgment, Defendant Arnold avers that there is no evidence presented to sustain this claim. As support, Defendant Arnold presents evidence that Plaintiff Brandon Hoffpauir actually refused medical attention when it was offered by the intake nurse at the detention center. (*See* doc. 21, Ex. D). The plaintiff does not rebut the defendant's evidence, present any evidence to the contrary, or in any other way establish a genuine issue of material fact as to this Section 1983

---

[1] Even if Defendant Arnold's use of force was considered "excessive"—which the court finds was not the case in the present matter—he would still be entitled to qualified immunity because his use of force was reasonable to secure an individual vigorously resisting arrest. The Fifth Circuit clearly provides that "even law enforcement officials who reasonably but mistakenly use excessive force are entitled to immunity." *Wagner*, 227 F.3d at 321.

claim. Therefore, this Court must grant summary judgment for Defendant Arnold as to the plaintiff's 42 U.S.C. § 1983 claim for failure to offer or provide medical attention.

        ii.   *Assault and Battery*

Plaintiff Brandon Hoffpauir also asserts Louisiana state law claims for assault and battery against Defendant Arnold. According to the Louisiana Supreme Court, a battery is "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact." *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987). Alternatively, "[a]n assault is a threat of such harmful or offensive contact." *Lawson v. Straus*, 673 So. 2d 223, 226 (La. App. 4 Cir. 1996) (quoting *Brown v. Diversified Hospitality Group*, 600 So. 2d 902, 906 (La. App. 4 Cir. 1992)) (internal quotation marks omitted). Nevertheless, "[u]nder ordinary circumstances the use of reasonable force to restrain an arrestee shields a police officer from liability for battery." *Ross v. Sheriff of Lafourche Parish*, 479 So. 2d 506, 511 (La. App. 1 Cir. 1985). By extension, the use of reasonable force would also shield a police officer from civil liability for an assault, as an assault is effectively the threat of a battery.

As outlined above, Plaintiff Brandon Hoffpauir has failed rebut the claim that he was vigorously resisting arrest at the time of Defendant Arnold's alleged assault and battery. For similar reasons as provided above, we find that Defendant Arnold's conduct was a reasonable use of force to secure the cooperation of plaintiff and complete the arrest. Accordingly, as Plaintiff has failed to present any evidence to the contrary, the court finds that there is no genuine issue of material fact, and Defendant Arnold's use of force to secure the arrest of Plaintiff Brandon Hoffpauir was reasonable under the circumstances. Accordingly, Defendant Arnold is entitled to summary judgment on the assault and battery claims.

iii.  *Intentional Infliction of Emotional Distress*

Finally, Plaintiff Brandon Hoffpauir asserts a claim for intentional infliction of emotional distress against Defendant Arnold. "[I]n order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). "Liability arises only where the mental suffering or anguish is extreme." *Id.* at 1210. "The distress suffered must be such that no reasonable person could be expected to endure it." *Id.*

Looking at the relevant evidence, Plaintiff Brandon Hoffpauir claims to suffer from recurring, intense headaches and stress. (Doc. 21, Ex. C, p. 70, lines 4−18; p. 73, lines 1−13). However, while these headaches are alleged to be recurring and intense, they do not rise to the level of "extreme" mental suffering or anguish. As proof, Plaintiff attests to the fact that he is still able to work as a contractor, despite these headaches. (*See* doc. 21, Ex. C, p. 72, lines 18−25). Moreover, there is no allegation that these headaches are even attributable to any "severe emotional distress" suffered by him as a result of the purported actions of Defendant Arnold.

Furthermore, any stress that Plaintiff Brandon Hoffpauir complains of did not result from the alleged conduct of Defendant Arnold on the night of August 6, 2011. Rather, this stress resulted from the fallout of that night. As Plaintiff Brandon Hoffpauir provides in his deposition:

> Q.   Any other injuries we've not discussed?
> A.   I mean, as far as injuries, no. I mean, there's a lot added more [sic] stress. Between the stressful situation, the stress of losing my home, you know, when we were living at The Parc, the stress of losing my job, getting behind on bills, her medical condition worsening because of the stress she's got, and, of course, then I have to console her on top of that. So, I

> mean, it's—and it's more than just—I mean, I go to work and I come home and I'm sore and I'm hurting. You know, I'm having to use ladders all day, so my knee and my leg are killing me all day long.

(Doc. 21, Ex. C, p. 73, lines 1−13). As can be seen, the stress that Plaintiff Brandon Hoffpauir suffers from is a result of the aftermath of the incident, including losing his job and bills piling up, as opposed to being directly attributable to any alleged "extreme or outrageous" behavior of Defendant Arnold or other "severe emotional distress."

Other than bare allegations, the court notes a lack of evidence as to any alleged intent on the part of Defendant Arnold to inflict severe emotional distress or calculation that Defendant Arnold "knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White*, 585 So. 2d at 1209. Accordingly, this Court finds that there is no genuine issue of material fact, and Defendant Arnold is entitled to judgment as a matter of law as to the plaintiff's intentional infliction of emotional distress claim.

### b. **Claims by Rachel Perkins Hoffpauir**

Plaintiff Rachel Perkins Hoffpauir also asserts multiple claims against Defendant Arnold, including "(a) false arrest, (b) false imprisonment, (c) intentional infliction of emotional distress, (d) unlawful seizure, (e) cruel treatment, (f) violation of the Constitution and other laws of the United States and the State of Louisiana, (g) excessive use of force, and (h) unreasonable use of force. (Doc. 1, p. 6, ¶ 28). Defendant Arnold provides in his motion for summary judgment that he is "not seeking dismissal of the claims against him for false arrest or false imprisonment." Accordingly, those claims will not be reviewed on summary judgment. Furthermore, for the same reasons mentioned above, the court refuses to analyze any purported malicious prosecution claim, as this claim is not presently pending before the court.

In his motion for summary judgment, Defendant Arnold asserts that he is entitled to qualified immunity on Plaintiff Rachel Perkins Hoffpauir's Section 1983 claims, and furthermore, that she is unable to provide sufficient evidentiary support for any of her claims. First, Defendant Arnold did not actually handcuff Plaintiff Rachel Perkins Hoffpauir. (Doc. 21, Ex. B, p. 97, lines 4−5). Rather, it was "Deputy Rigdell" who handcuffed her. (Doc. 21, Ex. B, p. 97, lines 4−5). Furthermore, and more telling, Plaintiff Rachel Perkins Hoffpauir explicitly answered in the negative when asked directly "[w]as excessive force ever used on [her] by anybody?" (Doc. 21, Ex. B, p. 105, lines 15−17). Finally, and similar to the situation with her co-plaintiff, Plaintiff Rachel Perkins Hoffpauir has failed to put forth sufficient evidence to establish a genuine issue of material fact as to any alleged intent to inflict severe emotional distress on her, or how Defendant Arnold's conduct was "extreme or outrageous," which is necessary to prove an essential element of her intentional infliction of emotional distress claim.

In her opposition, the plaintiff fails to address any of these problems or produce any evidence regarding her claims.[2] Accordingly, summary judgment must be granted in favor of Defendant Arnold as to all claims of Rachel Hoffpauir, except for the false arrest and false imprisonment claim.

2. <u>Defendants Willie Graves and Jason Ard's Motion (Doc. 22) for Partial Summary Judgment</u>

Besides Defendant Arnold, Plaintiffs Brandon Hoffpauir and Rachel Perkins Hoffpauir also sued Willie Graves individually and in his former official capacity as Sheriff of Livingston Parish, and Jason Ard individually and in his official capacity as Sheriff of Livingston Parish. The plaintiffs aver that "Defendants Graves and Ard are vicariously liable unto Complainants as a matter of Louisiana state law for Arnold's (a) battery, (b) assault, (c) false arrest, (d) false

---

[2] In fact, the plaintiffs do not even attach the deposition testimony of Plaintiff Rachel Perkins Hoffpauir to their memorandum in in opposition. Instead, the plaintiffs use the vast majority of their exhibits to attach evidence from other cases or to present evidence regarding other, alleged incidents.

imprisonment, (e) intentional infliction of emotional distress, (f) unlawful seizure, (g) cruel treatment, (h) failing to offer or provide medical attention, (i) violation of the Constitution and other laws of the United States and of the State of Louisiana, (j) excessive use of force, (k) unreasonable use of force." (Doc. 1, p. 6−7, ¶ 29). Further, the plaintiffs make claims for the "inadequate and reckless" hiring of Defendant Arnold and the failure to train, supervise, or control Defendant Arnold. (Doc. 1, p. 7, ¶ 30−31).

a. **42 U.S.C. § 1983 and Qualified Immunity**

At the outset, all claims under 42 U.S.C. § 1983 for the vicarious liability of Defendants Graves or Ard must be dismissed as "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Thus, any claims seeking to impose vicarious liability on Defendants Graves or Ard pursuant to 42 U.S.C. § 1983 must be dismissed.

Next, all Section 1983 claims against Defendant Graves "in his former official capacity as Sheriff of Livingston Parish" must be dismissed, because he cannot be sued in this manner. Defendant Jason Ard is presently the Sheriff of Livingston Parish, and therefore, any official capacity suit seeking to impose liability on the Living Parish Sheriff's Office may only be brought against Defendant Ard. *See Wakat v. Montgomery Country*, 471 F. Supp. 2d 759, 767 (S.D. Tex. 2007) ("Since the plaintiffs specifically named Williams as a defendant in his official capacity, he ceased to be a defendant the moment he ceased to be sheriff.") Therefore, all official capacity claims against Defendant Graves in his former official capacity as Sheriff of Livingston Parish must be dismissed as a matter of law.

i. *Defendant Graves*

Turning to the 42 U.S.C. § 1983 individual-capacity claims against Defendant Graves, the plaintiffs claim that Defendant Graves is liable in his individual capacity for the "inadequate and reckless pre-employment screening and assessment" of Defendant Arnold and for "his deliberate indifference to the acts of Arnold . . . and to whether Arnold is or was adequately trained, supervised, or controlled." (Doc. 1, p. 7, ¶¶ 30–32). Defendant Graves was Sheriff of Livingston Parish at the time of the incident on August 6, 2011. The Fifth Circuit clearly provides that "supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). "However, a supervisor may be held liable if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* at 304. Here, it is undisputed that Defendant Graves was not personally involved in the alleged incident on the night of August 6, 2011. Therefore, to hold Defendant Graves liable in his individual capacity, the plaintiffs must show that there is a sufficient causal connection between his wrongful conduct and the constitutional violation. *See id.*

However, the plaintiffs have failed to present evidence to establish a genuine issue of material fact as to this alleged wrongful conduct on the part of Defendant Graves, let alone present sufficient evidence to establish a "sufficient causal connection" between the alleged wrongful conduct and the alleged constitutional violation at issue in this matter. First, the plaintiffs do not present any evidence tending to show the inadequate training or supervision of Defendant Arnold. The plaintiffs rely on missed physical fitness tests as proof of inadequate training of Defendant Arnold; however, it cannot reasonably be argued that missed physical fitness tests have a "sufficient causal connection" to the alleged constitutional violation that the

14

plaintiffs claim in the present matter. (*See* doc. 28, Ex. H, p. 65, line 2 through p. 66, line 1). Furthermore, at the time of hiring Defendant Arnold, Defendant Graves did not know about and did not investigate the incident in Florida which occurred approximately ten years prior to Defendant Arnold being hired by the Livingston Parish Sheriff's Department. (*See* doc. 22, Ex. C; Doc. 28, Ex. C).

Nevertheless, in an attempt to impose individual-capacity liability under Section 1983, the plaintiffs assert that Defendant Graves ratified or endorsed Defendant Arnold's conduct through failing to take disciplinary action against him for his conduct on August 6, 2011, and thus, Defendant Arnold's actions became the actions of Defendant Graves. (*See* doc. 1, p. 5, ¶ 24). However, there is no evidence presented that Defendant Graves intended to adopt the actions of Defendant Arnold on August 6, 2011 as his own. There is only the failure to discipline Defendant Arnold. Without something additional, the failure to discipline is not sufficient to rise to the level of a "ratification" or "endorsement." *See Fraire v. City of Arlington*, 957 F.2d 1268, 1278–79 (5th Cir. 1992). Plaintiffs have failed to present any additional evidence that Defendant Graves knew the conduct at-issue was wrong and still refused to discipline Defendant Arnold, or otherwise willfully refused to discipline despite knowing Defendant Arnold's conduct was improper. There does not appear to be any evidence presented as to the failure to discipline for the present conduct, and thus, nothing to support a finding of "ratification" or "endorsement," other than the plaintiffs' conclusory allegations. In sum, there is simply no evidence or indication that Defendant Graves intended to adopt, ratify, or endorse the conduct of Defendant Arnold through his failure to impose discipline.

Finally, the plaintiffs do not present sufficient evidence to show "deliberate indifference." "[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor

disregarded a known or obvious consequence of his action." *Conncik v. Thompson*, 131 S.Ct. 1350, 1360 (2011) (quoting *Board of Commissioners of Bryan County. v. Brown*, 520 U.S. 397, 410 (1997)) (internal quotation marks omitted). This requires either some "actual or constructive notice." *Id.* Nevertheless, the plaintiffs have failed to present evidence that Defendant Graves knew or had constructive knowledge of the alleged inadequate training, supervision, or control of Defendant Arnold, or evidence tending to show how the conduct at-issue was a "known or obvious" consequence of this ostensible wrongful conduct on the part of Defendant Graves. Simply put, the plaintiffs have failed to present sufficient evidence to establish a genuine issue of material fact on the issue of "deliberate indifference"; they have only proffered conclusory allegations and unsubstantiated assertions as to Defendant Graves' purported deliberate indifference. Accordingly, for all of the above reasons, summary judgment must be granted in favor of Defendant Graves as to the plaintiffs 42 U.S.C. § 1983 individual-capacity claims.

ii. *Defendant Ard*

As the plaintiffs have sued Defendant Ard in his individual and official capacity, the court must evaluate each claim separately, as different standards apply to each. As mentioned above, to hold an individual liable in his individual capacity, the plaintiffs must show "either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304. The plaintiffs bring the same claims against Defendant Ard that they made against Defendant Graves, namely that Defendant Ard is liable for the "inadequate and reckless pre-employment screening and assessment" of Defendant Arnold, and Defendant Ard exhibited "deliberate indifference to the acts of Arnold . . . and to whether Arnold is or was adequately trained, supervised, or controlled." (Doc. 1, p. 7, ¶¶ 30–32).

However, the plaintiffs have failed to present sufficient evidence as to how Defendant Ard should be liable in his individual capacity for the pre-employment screening, assessment, and hiring of Defendant Arnold. Defendant Ard was not the Sheriff of Livingston Parish at the time Defendant Arnold was hired, and there is no evidence as to Defendant Ard's involvement otherwise in the hiring, screening, or assessment of Defendant Arnold. Further, the plaintiffs try again to claim that Defendant Ard affirmed Defendant Arnold's conduct through failing to discipline him. Yet, Defendant Ard was not Sheriff of Livingston Parish at the time of the conduct, and there is no indication that he had any say in the choice regarding whether to discipline Defendant Arnold for any alleged wrongdoings on the night of August 6, 2011. Moreover, without something more than simply failing to discipline, Defendant Ard could not be found to have "ratified" or "endorsed" any conduct on the part of Defendant Arnold. *See Fraire*, 957 F.2d at 1278–79. Finally, as was the case with Defendant Graves, the plaintiffs have failed to show any evidence that Defendant Ard either knew or possessed constructive knowledge of any inadequate training or supervision on the part of Defendant Arnold. Therefore, summary judgment must be granted in favor of Defendant Ard as to the 42 U.S.C. § 1983 claims against him in his individual capacity, as the plaintiffs have failed to present sufficient evidence to raise a genuine issue of material fact as to the claims.

Because Defendant Ard is currently the Sheriff of Livingston Parish, the plaintiffs also assert 42 U.S.C. § 1983 claims against him in his official capacity as sheriff. In *Kentucky v. Graham*, the Supreme Court provided that "[o]fficial-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." 473 U.S. 159, 165–66 (1985). By bringing suit against Defendant Ard in his official capacity as Sheriff of Livingston Parish, the plaintiffs are effectively seeking to impose liability on the Livingston

Parish Sheriff's Department for their 42 U.S.C. § 1983 claims. The plaintiffs raise the same claims against Defendant Ard in his official capacity as they brought against both defendants in their individual capacity.

Generally, to impose liability upon Defendant Ard, in his official capacity, the plaintiffs must establish three elements: "a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)) (internal quotation marks omitted). While there is no dispute that Defendant Ard is the Sheriff of Livingston Parish, and the Sheriff is the policymaker for the Livingston Parish Sheriff's Department, Defendant Ard does contend that the plaintiffs have failed to present sufficient evidence to establish a genuine issue of material fact as to the existence of "an official policy." (Doc. 22-1, p. 21). According to the Fifth Circuit, an "official policy" is:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). Defendants have failed to present a modicum of evidence as to either an officially-adopted policy or a persistent, widespread practice regarding the failure to train, supervise, or assess the conduct of officers in the Livingston Parish Sheriff's Department. Besides lacking evidence tending to show that Defendant Arnold was inadequately trained, supervised, or assessed, the record in this case is

completely devoid of any evidence establishing something amounting to an "official policy" on the part of the Livingston Parish Sheriff's Department.

Looking more specifically at the failure to train and supervise claims, the Fifth Circuit has previously provided that "[a] sheriff not personally involved in the acts that deprived the plaintiff of his constitutional rights is liable under section 1983 if: 1) the sheriff failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001). Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference. *Id.* (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798–99 (5th Cir. 1998)). "The plaintiff must generally demonstrate at least a pattern of similar violations." *Id.* (citing *Snyder*, 142 F.3d at 798). "[T]he inadequacy of training must be obvious and obviously likely to result in a constitutional violation." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)).

Similar to above, the record is simply devoid of evidence tending to show "deliberate indifference" on the part of the Livingston Parish Sheriff's Department. There is no proffered evidence of prior, similar incidents. The plaintiffs attempt to rely on the bare allegations from prior cases, but none of these cases have resolved in a final judicial finding of wrongdoing on the part of Defendant Arnold. The plaintiffs' bare allegations are not enough to show something amounting to "deliberate indifference" as to training or supervision. Accordingly, due to the failure to present evidence raising a genuine issue of material fact, the court must grant summary judgment for Defendant Ard as to the Section 1983 official-capacity claims.

b.  **State Law Claims**

The Court has already granted summary judgment for Defendant Arnold as to all state law claims asserted against him by the plaintiffs, except for Plaintiff Rebecca Perkins Hoffpauir's false imprisonment and false arrest claims. Accordingly, neither Defendant Graves nor Defendant Ard can be vicariously liable for these state law claims against Defendant Arnold, for which summary judgment has already been granted. Nevertheless, there still remains the vicarious liability claim for the alleged false arrest and false imprisonment committed by Defendant Arnold, and the plaintiffs' claims against the defendants for the negligent hiring, training, retention, and supervision of Deputy Arnold.

i.  *Negligent Hiring, Training, Retention, and Supervision*

Defendant Graves and Defendant Ard aver that immunity under Louisiana Revised Statutes § 9:2798.1 should immunize them from state-tort liability for any alleged negligent hiring, training, retention, or supervision. Louisiana Revised Statutes § 9:2798.1 provides:

> Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

La. R.S. § 9:2798.1(B). The plaintiffs counter that the state-granted immunity should not apply in this situation, because it does not apply "to acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct." La. R.S. § 9:2798.1(C)(2). However, the plaintiffs have failed to show how any alleged conduct of the defendants rose to such a level as to make the state-granted immunity inapplicable.

In *Smith v. Lafayette Parish Sheriff's Department*, the Louisiana Third Circuit Court of Appeal found that the discretionary-act immunity applied in a case where the plaintiff alleged the Lafayette Parish Sheriff's Department hiring and retention policy was inadequate. *See* 874 So. 2d

863 (La. App. 3 Cir. 2004). In *Smith*, a rape victim brought suit against the Lafayette Parish Sheriff's Department claiming that the Sheriff's hiring/retention policies were inadequate, after it was discovered that one of the department's detectives had raped her and multiple other individuals. *Id.* at 865. The court found that the sheriff's "hiring/retention policy was a discretionary act" and liability could not be imposed on the department or its officers for the application of that policy. *Id.* at 867.

Similarly, the hiring, training, and supervision policy of the Livingston Parish Sheriff's Department is a discretionary function. Like in *Smith*, the plaintiffs have failed to point to a Louisiana statute mandating a particular policy or procedure for hiring, training, supervising, or screening officers; and the court's review has also failed to uncover any relevant statute mandating a policy or procedure. Accordingly, the sheriff's department's hiring, training, retention, and supervision policy are discretionary functions, for which Louisiana Revised Statutes § 9:2798.1 grants the officers and the department immunity.

Furthermore, the plaintiffs failed to establish a genuine issue of material fact as to how the actions of the department or its officers rose to such a level as to make the state-granted immunity inapplicable. No evidence of any alleged conduct rises to the level of "criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct." La. R.S. § 9:2798.1(C)(2). The plaintiffs focus on a prior incident involving Defendant Arnold, which occurred in Florida over ten years prior to being hired by the Livingston Parish Sheriff's Department, and want this Court to find that hiring Defendant Arnold in spite of this incident makes any discretionary-function immunity inapplicable. This Court refuses to find that a sole incident occurring in another state, ten years prior, without any intervening problems, would lead

to a finding of "recklessness" or "deliberate indifference" on the part of the sheriff's department or its officers for the hiring of Defendant Arnold.[3]

The court also finds that this "history" of Defendant Arnold's improper conduct that the plaintiffs cite to is a misnomer. First, each Louisiana lawsuit that has been brought against Defendant Arnold has been brought by this same counsel. Furthermore, these lawsuits have either not resulted in a judgment or have ended in a judgment in favor of Defendant Arnold.[4] There must be something more than mere allegations and baseless assertions to convince this Court to find "recklessness" or "deliberate indifference" on the part of the Livingston Parish Sheriff's Department and its officers. Accordingly, summary judgment must be granted as to any state law claims for negligent hiring, training, or supervision due to the Louisiana state immunity for discretionary functions.

  ii. *Vicarious Liability*

With regards to the vicarious liability claims, the Louisiana Civil Code provides that "[m]asters and employers are answerable for the damage occasioned by their servants . . . in the exercise of the functions in which they are employed." La. Civ. Code art. 2320. However, "[u]nder Louisiana law, a parish sheriff is liable in his official, but not personal, capacity as an employer of a deputy, for the deputy's torts in the course and scope of employment." *Hall v. St. Helena Parish Sheriff's Dept.*, 668 F. Supp. 535, 540 (M.D. La. 1987). Accordingly, Defendant Graves cannot be vicariously liable for any state law tort claims, because a sheriff can only be

---

[3] With regards to this prior incident, it must be mentioned that the Florida Department of Law Enforcement found that "no disciplinary action" should be taken against Defendant Arnold's certification, and that he should remain on the job to learn from his mistake. (Doc. 28, Ex. B).

[4] In *Livermore v. Arnold*, 10-507-JJB-SCR, the case was dismissed prior to judgment, and furthermore, unlike what plaintiff's counsel seems to imply, the court never made a finding on the applicability of qualified immunity. The case of *Cox v. Columbia Casualty Company* has not presently resulted in a judgment or other resolution. Finally, in *Rice, et al. v. Reliastar Life Insurance Company et al.*, 11-cv-44-BAJ-SCR, the court recently granted summary judgment in favor of the defendants, including Defendant Arnold, and thereby dismissed all of the plaintiffs' claims against Defendant Arnold. The judgment in that case is currently being appealed.

vicariously liable in his official capacity for the torts of a deputy, and Defendant Graves is no longer the Sheriff of Livingston Parish.

However, as Defendant Ard is currently the Sheriff of Livingston Parish, he can be held vicariously liable in his "official capacity" for the alleged false arrest and false imprisonment committed by Defendant Arnold. The Louisiana discretionary-function immunity does not appear to apply to these vicarious liability claims, nor has there been a viable argument presented for the immunity's application. Accordingly, the Court declines to grant summary judgment as to the remaining state-law vicarious liability claims made against Defendant Ard, in his official capacity.

3.  <u>Defendant Columbia Casualty Company's Motion (Doc. 24) for Partial Summary Judgment</u>

In its Motion (doc. 24) for Partial Summary Judgment, Defendant Columbia "adopts by reference the Facts, Law, Argument, and Exhibits contained in the Motion for Partial Summary Judgment and Statement of Uncontested Facts previously filed by co-defendants Willie Graves and Jason Ard." (Doc. 24, p. 1). The plaintiffs filed suit against Columbia under the Louisiana Direct Action Statute, La. R.S. § 22:1269, as it is the insurance providers for the defendants. The Louisiana Direct Action Statute "affords a victim the right to sue the insurer directly when the liability policy covers a certain risk." *Soileau v. Smith True Value and Rental*, 2013 WL 3305265, at *11 (La. June 28, 2013). As Defendant Columbia has made no additional arguments in their motion for summary judgment, other than adopting the facts and arguments offered by Defendant Ard and Defendant Graves in their motion for summary judgment, the same findings on summary judgment will apply to Columbia. Summary judgment is granted as to all of plaintiffs' claims against Defendant Columbia Casualty Company, except as to the claims for

vicarious liability on the part of Defendant Ard for the alleged false arrest and false imprisonment of Rachel Perkins Hoffpauir.

4.  Punitive Damages Claims

After all of the above findings on summary judgment, the only remaining claims are Louisiana state tort law claims for the false arrest and false imprisonment of Rachel Perkins Hoffpauir, as well as vicarious liability claims seeking to impose liability on Defendant Ard, in his official capacity, or Columbia Casualty Company for these alleged tortious acts of Defendant Arnold. As a result, the plaintiffs' claims for punitive damages must be dismissed. "[P]unitive damages are not allowed under Louisiana law in absence of a specific statutory provision." *Zaffuto v. City of Hammond*, 308 F.3d 485, 491 (5th Cir. 2002). As there is no Louisiana statute providing for punitive damages with relation to these remaining state law claims, the plaintiffs' claims for punitive damages must be dismissed.

**Conclusion**

Accordingly, [1] Defendant Deputy Joel Arnold's Motion (doc. 21) for Partial Summary Judgment is **GRANTED;** [2] Defendants Willie Graves and Jason Ard's Motion (doc. 22) for Partial Summary Judgment is **GRANTED IN PART AND DENIED IN PART**, and [3] Defendant Columbia Casualty Company's Motion (doc. 24) for Partial Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

All claims against Defendant Arnold are **DISMISSED**, except for Plaintiff Rachel Perkins Hoffpauir's false arrest and false imprisonment claims.

All claims against Defendant Willie Graves are **DISMISSED**, and he is **DISMISSED** from this suit.

24

All claims against Defendant Jason Ard are **DISMISSED**, except for the vicarious liability claims made against him for Defendant Arnold's purported false arrest and false imprisonment of Plaintiff Rachel Perkins Hoffpauir, as provided above.

Finally, all claims against Defendant Columbia Casualty Company are **DISMISSED**, except for the vicarious liability claims made against it for Defendant Arnold's purported false arrest and false imprisonment of Plaintiff Rachel Perkins Hoffpauir, as provided above.

Signed in Baton Rouge, Louisiana, on November 4, 2013.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**